# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brandy Brewer,<br><br>    Plaintiff,<br><br>v.<br><br>Leprino Foods Company, Inc.,<br><br>    Defendant. | No. CV-1:16-1091-SMM<br><br>**ORDER** |

Before the Court is Defendant Leprino Foods Company, Inc.'s ("Leprino") motion for summary judgment, or in the alternative, for partial summary judgment on the issue of punitive damages. (Doc. 33 at 6.) Plaintiff Brandy Brewer ("Brewer") filed her opposition (Doc. 34 at 21), and Leprino filed its reply in support (Doc. 35 at 16). After review and consideration, the Court hereby grants Leprino's motion for summary judgment on the issue of punitive damages.

Additionally, the parties have asked the Court to rule on evidentiary objections that were filed in support of the parties' summary judgment briefs. (Docs. 34-8; 34-9; 34-10; 35-2.) The Court now rules on the evidentiary objections that were material to the Court's July 19, 2018 Order. (Doc. 36.) For the reasons set forth herein, the Court overrules the parties' objections.

**I.    FACTUAL BACKGROUND**

Leprino's motion for summary judgment requires this Court to view the facts in the

light most favorable to Brewer, the nonmoving party. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).

Leprino is a dairy product manufacturer, who states it is the world's largest mozzarella cheese producer. (Doc. 33-1 at 8.) Leprino has 12 manufacturing plants with the largest plant being Lemoore West, in Lemoore, California, which currently has over 1,000 employees and operates 24 hours a day, seven days a week. (Id.) According to Leprino, as a manufacturer using energized equipment, one of its most critical safety procedures is its Lockout/Tagout ("LOTO") policy, which not only enforces Leprino's strong value-driven protection of its employees, but also is required by law to protect employees from injury or death while servicing machinery. (Id. at 9.) In 2011, Leprino states it enacted "zero-tolerance" for LOTO violations, making even first-time violations subject to strong discipline up to and including termination. (Id.) Since 2011, Leprino states it has terminated 11 employees for LOTO violations. (Id.) Of the 11, Leprino discharged Brewer and another female, while the remaining nine were male employees. (Id.)

Brewer started working at Leprino's Lemoore West plant in 2009. (Doc. 34 at 5.) Brewer's superiors included Jennifer Miranda ("Miranda"), Jason Rocha ("Rocha"), Erin McDaniel ("McDaniel"), David Heinks ("Heinks"), Kes Anderson ("Anderson"), Don Doyle ("Doyle"), and Robert Tuttrup ("Tuttrup"). (Id.; Doc. 33-1 at 24.) Rocha and McDaniel were Senior Supervisors. (Doc. 33-1 at 10, 14.) Heinks was the Safety Supervisor responsible for safety education, training, and inspections; regulatory compliance; incident investigations; and developing safety policies for the Lemoore West plant. (Doc. 33-12 at 2.) Heinks reported directly to Human Resources Manager Anderson. (Id.) Anderson managed employee leaves of absence, workplace investigations, employee discipline, and reasonable accommodation requests. (Doc. 33-13 at 2.) Doyle was the Processing Manager who supervised 225 people and was responsible for ensuring that employees were treated consistently and fairly in compliance with Leprino's policy handbook. (Docs. 34 at 21; 34-7 at 334-35.) With input from Anderson, Doyle was also authorized to recommend employee terminations. (Doc. 34-7 at 335, 337.) Tuttrup was an

officer at Leprino and the Plant Manager of Lemoore West. (Doc. 33-14 at 2.) Tuttrup was authorized to terminate employees and had terminated each of the 11 employees who were terminated from Lemoore West for LOTO violations. (Id.)

Based on her work performance, Brewer was promoted to a group leader position in November 2010. (Docs. 33-1 at 10; 34 at 5.) Brewer's regular assignment as a group leader was to the palletizer machines. (Doc. 33-1 at 12.) The proper LOTO procedure for servicing or clearing jams in the palletizer was to: (1) activate two points of control to fully de-energize the palletizer, and (2) place a lock on the second point of control. (Id.) The first point of control is a safety light curtain, which is triggered by motion in front of the sensor. (Id.) Triggering the light curtain stops the palletizer but does not completely de-energize it (meaning the palletizer can be started up again with a push of a button). (Id.) The second point of control is the emergency stop ("E-stop") button, which must be pressed after activating the light curtain and which then must be locked with a personal lock. (Id.) When the light curtain is activated, there is a loud alarm, unless the E-stop button is also engaged, to remind individuals that the machine is not fully de-energized. (Id.) If the E-stop button is engaged, the alarm will not sound and the palletizer cannot be started at a control panel until the E-stop button is disengaged. (Id.)

Leprino states Brewer was approved for and took leaves of absences throughout her employment, which included pregnancy and disability leave and Family and Medical Leave Act ("FMLA") leave. (Id. at 10-11.) According to Brewer, she was not provided all leaves of absences she requested. (Doc. 34-4 at 3.) In her declaration, Brewer states she requested to take baby-bonding time in March 2012 but was forced back to work when her child was six weeks old.[1] (Id.) According to Brewer, her use of FMLA leave negatively affected her supervisor, Miranda. (Doc. 34-7 at 69, 76-77.) On numerous occasions, Miranda told Brewer that she was a "bad employee" for taking FMLA leave. (Id.) Miranda also stated to Brewer that she preferred working with men because they did not have family

---

[1] In her deposition, Brewer testified that she requested to take leave beginning November 10, 2011 and returning March 15, 2012. (Doc. 33-5 at 86.) Brewer stated that Leprino approved her leave and did not prevent her from taking leave. (Id.)

- 3 -

obligations and that she was tracking Brewer's FMLA leave to take it to management to get her fired. (Id.) This comment was made in front of another supervisor, Tiffany Labuga ("Labuga"), who, after hearing it, told Brewer to complain as Miranda was retaliating against her. (Id. at 53, 77, 308-09.)

In her declaration, Brewer states that from April to June 2014 she discussed Miranda's comments with her superiors. (Doc. 34-4 at 2.) First, Brewer informed McDaniel about Miranda's negative FMLA comments and perceived threats.[2] (Id. ¶ 6.) Next, Brewer complained to Rocha, who responded that she was "lucky to have a job" at Leprino and "not flipping burgers at Burger King." (Id. ¶ 7.) Brewer states Rocha threatened her job if she continued to complain.[3] (Id.) Brewer further complained to Doyle that she believed Miranda was retaliating against her and wanted to get her fired. (Id. ¶ 8.) The record shows Brewer never filed a formal complaint of retaliation or harassment with Leprino. (Doc. 33 at 4.)

During her employment, Brewer states that supervisors told her certain pieces of equipment were considered "gray area[s]" and could be de-energized by flagging the curtain and hitting the E-stop. (Doc. 34-7 at 50.) "It was standard practice to hit two points of control without placing the lock on the palletizer." (Docs. 34-4 at 4; 34-7 at 97-98, 444-46, 451, 467.) In fact, it was common practice to simply flag the curtain, and not hit the E-stop. (Docs. 34-4 at 4; 34-7 at 482-83.)

On July 9, 2014, one of the palletizer machines became jammed, and Brewer climbed onto the rollers to clear the jam. (Doc. 33-1 at 13.) Using a large mirror that was positioned to see onto the palletizer's roller bed, Miranda and another employee observed Brewer on the palletizer rollers. (Id.) Miranda filed an incident report, contending that Brewer violated the LOTO policy. (Id. at 14.) Per Leprino's LOTO policy, Brewer was suspended pending investigation. (Id.) Based on deposition testimony, Brewer contends

---

[2] In her deposition, Brewer was asked whether she spoke to McDaniel about Miranda's negative FMLA comments. (Doc. 33-5 at 102, 104.) Brewer responded: "I want to say I talked to McDaniel about it," "I'm not sure. I think so, but I'm not sure." (Id.)

[3] In her deposition, Brewer testified that she spoke to Rocha about Miranda's FMLA comments, but she did not testify about Rocha's response or threat. (Doc. 34-7 at 85-86.)

- 4 -

that male co-workers also committed LOTO violations on that day but were not suspended pending investigation. (Docs. 34-7 at 42-44, 444-46, 451, 483, 500-04; 34-4 at 1-4.)

Based on its investigation, Leprino concluded that Brewer failed to properly lock out the top control panel before entering the palletizer, which put her life in imminent danger. (Doc. 33-1 at 14.) Plant Manager Tuttrup recommended to terminate Brewer's employment, and Brewer was discharged effective July 18, 2014. (Id.)

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, show "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Id.; see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130. The court will determine whether a genuine issue of material fact exists through the "lens of the quantum of proof applicable to the substantive claim at issue." Steven Baicker-McKee et al., Federal Civil Rules Handbook 1104 (Thomas Reuters 25th ed. 2018); see Anderson, 477 U.S. at 254.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof

at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial; instead, the moving party may identify the absence of evidence in support of the opposing party's claims. See Celotex, 477 U.S. at 317, 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the opposing party "may not rest upon the mere allegations or denials of [the party's] pleadings, but…must set forth specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)).

### B. Punitive Damages

In her complaint, Brewer's first cause of action alleges her discharge was retaliatory in violation of the FMLA and California's Fair Employment and Housing Act ("FEHA"). (Doc. 1 at 15.) Brewer's second cause of action alleges that her discharge was illegal gender discrimination in violation of FEHA. (Id. at 17.) Brewer seeks punitive damages on these claims (Id. at 16, 18), and Leprino moves for summary judgment (Doc. 33 at 6).

#### 1. Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654

It is well settled that the FMLA does not provide for punitive damages. Farrell v. Tri-County Metro. Transp. Dist. of Or., 530 F.3d 1023, 1025 (9th Cir. 2008) (citation omitted). Thus, the Court finds summary judgment is appropriate on Brewer's punitive damages claim under the FMLA. See id.

#### 2. Fair Employment and Housing Act, Cal. Gov't Code § 12940

Punitive damages are available for violations of FEHA. Yeager v. Corr. Corp. of Am., 944 F. Supp. 2d 913, 931 (E.D. Cal. 2013) (citation omitted); Cal. Gov't Code § 12989.2. To recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant was guilty of "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). An employer will be liable for an employee's acts where the employer ratified an employee's wrongful conduct or was personally guilty of oppression, fraud, or malice. Cal.

Civ. Code § 3294(b).

A corporate employer, however, will be liable for punitive damages only where the corporation's "officer, director, or managing agent" personally engaged in or ratified the wrongful conduct. Id. Corporate ratification requires "actual knowledge of the conduct and its outrageous nature." Coll. Hosp. Inc. v. Superior Court, 8 Cal. 4th 704, 726 (1994). To qualify as a corporation's managing agent, an employee must "exercise substantial discretionary authority over decisions that ultimately determine corporate policy." White v. Ultramar, Inc., 21 Cal. 4th 563, 573, 577 (1999) ("[S]ection 3294, subdivision (b), placed [managing agent] next to the terms 'officer' and 'director,' intending that a managing agent be more than a mere supervisory employee."); see also Taylor v. Trees, Inc., 58 F. Supp. 3d 1092, 1106 (E.D. Cal. 2014). Managing agent status is not necessarily dependent upon an employee's managerial level or an employee's ability to hire and terminate. See White, 21 Cal. 4th at 566, 576-77. To qualify as a managing agent, a plaintiff must demonstrate that an employee exercises "substantial independent authority and judgment" "over vital aspects of [a corporation's] business." Id. at 567, 577 (finding that the zone manager responsible for firing plaintiff was a managing agent because she managed eight of defendant's stores, supervised 65 employees, and made decisions that affected both store and corporate policy).

Leprino argues there is no evidence that an officer, director, or managing agent engaged in or ratified oppressive, fraudulent, or malicious conduct. (Doc. 33-1 at 24.) Leprino contends that, although Tuttrup and members of the Safety Review Board who reviewed Brewer's termination were officers, there is no evidence that they knew about Brewer's complaints or expressed any animus towards Brewer. (Id.) Leprino further argues that Doyle's involvement in Brewer's termination is irrelevant because he was not an officer at Leprino. (Doc. 35 at 16.)

Brewer asserts that "[n]umerous supervisors, including an HR manager, and Don Doyle, who ha[d] 225 people reporting to him and ha[d] the ability to recommend terminations," were involved in Brewer's termination. (Doc. 34 at 21.) Brewer states: "As

processing manager, part of Don Doyle's responsibility was to ensure that employees were treated consistently and fairly in compliance with Leprino's policy handbook." (Id.) Brewer argues that "[p]unitive damages may be awarded where the employer is shown to have tolerated violations of FEHA."[4] (Id.)

Here, Leprino moves for summary judgment, which requires the Court to view the evidence in the light most favorable to Brewer, the nonmoving party. See Tolan, 134 S. Ct. at 1866. The evidence shows that numerous supervisors and officers, including Miranda, Rocha, McDaniel, Heinks, Anderson, Doyle, and Tuttrup were involved in Brewer's termination. (Docs. 33-1 at 10, 14-15; 34 at 10-12, 21.)

However, the Court finds that Brewer has failed to produce clear and convincing evidence that Miranda, Rocha, McDaniel, Heinks, Anderson, or Doyle qualify as Leprino's managing agents because there is no evidence that they were more than "mere supervisory employee[s]." See White, 21 Cal. 4th at 573. Except for Miranda's, Rocha's, and McDaniel's supervisory titles, there is no evidence that these employees made decisions that affected Leprino's local or corporate policy. Further, although Heinks affected local policy by supervising the development of safety policies and procedures for Lemoore West, there is no evidence suggesting that his decisions also influenced other plant's policies or Leprino's corporate policies. Similarly, Anderson and Doyle affected local policy by recommending employee terminations. However, neither Anderson nor Doyle had the authority to independently recommend or terminate employees. See id. at 566 (discussing that the ability to hire and terminate is insufficient in itself to qualify as a managing agent). Moreover, although Doyle supervised 225 of Lemoore West's 1,000 employees, there is no evidence indicating whether this was vital to Leprino's business or how this role affected Leprino's business. Thus, Brewer has failed to raise a genuine issue as to whether Miranda, Rocha, McDaniel, Heinks, Anderson, or Doyle were Leprino's managing agents

---

[4] This is a misstatement of the applicable legal standard. See Cal. Civ. Code § 3294(b); see also Coll. Hosp. Inc., 8 Cal. 4th at 726.

because there is no evidence that they exercised substantial discretionary authority over decisions that affected corporate policy. See id. at 577.

On the other hand, Tuttrup was an officer at Leprino. However, there is no evidence that Tuttrup engaged in or had actual knowledge of wrongful conduct. See Coll. Hosp. Inc., 8 Cal. 4th at 726. Therefore, the Court finds that summary judgment is appropriate on Brewer's punitive damages claims under FEHA.

## III. EVIDENTIARY OBJECTIONS

The parties filed evidentiary objections in support of their summary judgment briefs. (Docs. 34-8; 34-9; 34-10; 35-2.) The Court reviewed the objections to the extent that they were material to the Court's July 19, 2018 Order. See Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010). For the following reasons, the Court hereby overrules the objections.

### A. Legal Standard

A party may object that evidence used to "support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, at summary judgment, the nonmoving party's evidence need not be in an admissible form as long as the contents would be admissible at trial. See Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (citation omitted). A court may properly consider objected-to evidence in ruling on summary judgment as long as the nonmoving party's evidence could be presented in an admissible form at trial. See Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006); see also Fraser, 342 F.3d at 1036-37. In contrast, the moving party's evidence must be admissible in both form and content. See Quanta Indem. Co. v. Amberwood Dev. Inc., No. CV-11-01807-PHX-JAT, 2014 WL 1246144, at *2 (D. Ariz. Mar. 26, 2014) (citing Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987)).

A court must rule on evidentiary objections that are material to its ruling. See Norse, 629 F.3d at 973. An objection is material if the court considers the evidence in ruling on the motion for summary judgment. Roberts v. Albertson's LLC, 464 Fed. Appx. 605, 606

### B. Brewer's Objections

Brewer filed evidentiary objections to Anderson's, Heinks's, and Tuttrup's declarations. (Docs. 34-8; 34-9; 34-10.) However, only two objections to statements within Heinks's declaration were relevant to the Court's ruling. (Doc. 34-9 at 2, 6 (discussing Doc. 33-12 at 2 ¶ 3, 5 ¶ 18).) First, Heinks describes Leprino's LOTO policy as "one of the most critical safety policies and procedures Leprino maintains." (Doc. 33-12 at 2 ¶ 3.) Second, Heinks discusses Brewer's LOTO violation and asserts that "Ms. Brewer's failure to properly lock out the top control panel before entering the palletizer put her life in imminent danger." (Id. at 5 ¶ 18.) Brewer contends these statements constitute improper lay opinion and Heinks lacks personal knowledge to testify to these facts. (Doc. 34-9 at 2, 6-7.)

A witness may testify to matters within the witness's personal knowledge as long as the testimony is "helpful to clearly understanding the witness's testimony or to determining a fact in issue" and is not based on specialized knowledge. Fed. R. Evid. 701; see Fed. R. Evid. 602. Although a witness is prohibited from speculating, guessing, or voicing suspicions, a witness may testify to "opinions and inferences grounded in observations and experience." United States v. Whittemore, 776 F.3d 1074, 1082 (9th Cir. 2015) (internal quotations and citations omitted).

Here, the Court finds that Heinks's testimony is within his purview as Leprino's employee and Lemoore West's Safety Supervisor. Heinks is familiar with energized equipment, is responsible for employees' safety training and education, and oversees the development of safety policies for Lemoore West. Based on his knowledge and experience, Heinks can certainly opine about the importance of Leprino's LOTO policy and the apparent danger that may accompany a LOTO violation. Therefore, the Court overrules Brewer's objections.

### C. Leprino's Objections

Leprino filed objections challenging statements within Brewer's declaration. (Doc.

35-2.) The Court has organized the material objections into the following categories: (1) contradictory evidence; (2) hearsay; (3) foundation; and (4) relevance.

### 1. Contradictory Evidence

Leprino argues that statements in Brewer's declaration contradict her deposition testimony. (Doc. 35-2 at 3-4, 10-14 (discussing Doc. 34-4 at 2-4 ¶¶ 6-7, 22, 29-31).) The Court will address each of the objected-to statements in Brewer's declaration in turn, and the Court will compare each statement to Brewer's deposition testimony.

"[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) (citing Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543-44 (9th Cir. 1975)) (discussing the sham affidavit rule). This rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." Id. at 266-67. To invoke this rule, a district court must first determine that the contradiction is a "sham" used to "'create' an issue of fact and avoid summary judgment." Id. Then, the court must determine that the inconsistency is "clear and unambiguous" to justify striking an affidavit. Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998-99 (9th Cir. 2009). An affidavit that elaborates on, explains, or clarifies deposition testimony is not a sham. Id. at 999.

In Brewer's declaration, she claims that she spoke to McDaniel in April 2014 about Miranda's preferential treatment of male employees and Miranda's negative FMLA comments. (Doc. 34-4 at 2 ¶ 6.) In her deposition, Brewer testified that she spoke to McDaniel about Miranda's relationship with and preferential treatment of a male employee. (Doc. 33-5 at 74.) Brewer was asked whether she also spoke to McDaniel about Miranda's FMLA comments to which Brewer responded "I want to say I talked to McDaniel about it," "I'm not sure. I think so, but I'm not sure." (Id. at 102, 104.) Leprino argues that Brewer's declaration is contradictory because Brewer affirmatively states in her declaration that she spoke to McDaniel about the FMLA comments while in her

- 11 -

deposition she testified that she was "not sure."[5] (Doc. 35-2 at 4.) The Court finds that Brewer's declaration does not flatly contradict her deposition. Although she was uncertain, Brewer stated twice in her deposition that she believed she spoke to McDaniel about Miranda's FMLA comments. Yet, Leprino overlooks this testimony by simply arguing that Brewer was "not sure" whether she spoke to McDaniel. Therefore, the Court overrules Leprino's objection.

In her declaration, Brewer claims that, after she complained to Rocha about Miranda's comments, Rocha responded that she was "lucky to have a job" with Leprino and "not flipping burgers at Burger King." (Doc. 34-4 at 2 ¶ 7.) Brewer further claims that Rocha threatened her job if she continued to complain. (Id.) In her deposition, Brewer testified that she spoke to Rocha about Miranda's FMLA comments. (Doc. 33-5 at 103.) Brewer was then asked whether she shared additional "complaints" with Rocha about her job to which she responded "I don't know… I don't think so." (Id.) Brewer did not testify about Rocha's response or threat, and thus Leprino contends Brewer's declaration is contradictory. (Doc. 35-2 at 4.) The Court disagrees. Brewer was not asked in her deposition whether or how Rocha responded to her complaints. Brewer was only asked whether she shared additional complaints about her job. The Court finds that Brewer's declaration elaborates on her deposition, and thus overrules Leprino's objection.

In her declaration, Brewer claims that she was forced to return from leave in March 2012, when her child was six weeks old. (Doc. 34-4 at 3 ¶ 22.) In her deposition, Brewer testified that she requested to take leave beginning November 10, 2011 and returning March 15, 2012 and stated Leprino did not prevent her from taking the leave. (Doc. 33-5 at 86.) Leprino argues Brewer's declaration is contradictory because she testified during her deposition that Leprino did not prevent her from taking leave. (Doc. 35-2 at 10.) However, the Court finds Brewer's declaration does not flatly contradict her deposition. It is unclear whether Brewer alleges in her declaration that she returned to work earlier than

---

[5] Leprino also contends that Brewer's declaration is contradictory because she testified that Miranda's comments were made in June or July 2014, not April. (Doc. 35-2 at 4.) However, the timing of Miranda's comments is immaterial.

- 12 -

the expected March 15, 2012 return date. Thus, her declaration may clarify her deposition testimony. Therefore, the Court overrules the objection because the inconsistency is not "clear and unambiguous." See Van Asdale, 577 F.3d at 998.

Brewer states in her declaration that supervisors instructed her not to lock out certain machines to clear a jam. (Doc. 34-4 at 4 ¶ 29.) Brewer further states that "[i]t was standard practice to hit two points of control without placing the lock on the palletizer." (Id. ¶ 30.) Similarly, in her deposition, Brewer testified that supervisors instructed her not to lock out certain machines "as long as [she] hit two points of control" because the machines were considered "gray area[s]." (Doc. 33-5 at 29; 34-7 at 49.) Leprino argues Brewer's declaration is contradictory because Brewer stated in her deposition that supervisors emphasized hitting two points of control to clear a jam. (Doc. 35-2 at 12.) The Court finds that Brewer's declaration is consistent with her deposition and overrules Leprino's objection. Further, the Court anticipates that Leprino will cross examine Brewer on this point and how she arrived at her belief.

In her declaration, Brewer claims that, in addition to not locking out the machines to clear a jam, it was common practice to flag the curtain and not hit the E-stop. (Doc. 34-4 at 4 ¶ 31.) In her deposition, Brewer testified the only practice she observed that differed from the LOTO policy was that employees would not lock out the machines to clear a jam. (Doc. 34-7 at 47.) Leprino argues Brewer's declaration is inconsistent; however, the Court finds the inconsistency is not "clear and unambiguous." See Van Asdale, 577 F.3d at 998. First, although Brewer may not have personally observed employees flag the curtain and not hit the E-stop, other employees may have told Brewer that this was a common practice. Second, Elmer Meade ("Meade"), a Leprino employee, confirmed Brewer's statement by testifying that this was a common practice amongst employees.[6] Therefore, the Court finds Brewer's declaration elaborates on her deposition, and the Court overrules the objection.

For the reasons set forth, the Court finds that Brewer's declaration is not a sham

---

[6] Meade testified in his deposition that he personally observed employees flag the curtain and not hit the E-stop approximately 50 to 75 times. (Doc. 34-7 at 482-83.) He stated he was "guilty of that as well." (Id. at 483.)

because the inconsistencies in Brewer's declaration are not "clear and unambiguous." Id.; see Kennedy, 952 F.2d at 266. Therefore, the Court overrules Leprino's objections.

### 2. Hearsay

In her declaration, Brewer claims Labuga told her Miranda was retaliating against her. (Doc. 34-4 at 2 ¶ 5.) Brewer also claims that, after complaining to Rocha about Miranda, Rocha responded that she was "lucky to have a job" with Leprino and "not flipping burgers at Burger King." (Id. ¶ 7.) Leprino argues that these statements contain inadmissible hearsay. (Doc. 35-2 at 3, 4.)

At the moment, the Court finds that these statements are an exception to the rule against hearsay because they are not offered to prove the truth of the matter asserted. See Fed. R. Evid. 801(c)(2); Fed. R. Evid. 803. These statements are offered for the limited purpose of establishing the declarant's state of mind, and thus the statements cannot be offered to prove the truth of the matter asserted. However, the Court may properly consider the evidence in ruling on the motion for summary judgment as long as Brewer could present the evidence in an admissible form at trial. See Fraser, 342 F.3d at 1037. Therefore, the Court overrules Leprino's hearsay objections at this time.

### 3. Foundation

Brewer asserts in her declaration that various Leprino employees committed LOTO violations and "were not considered for termination pending investigation." (Doc. 34-4 at 1-2 ¶ 4.) In addition, Brewer claims her supervisors instructed her "not to fully lock the machines out when boxes are jammed," (Id. at 4 ¶ 29), and that "[i]t was standard practice to hit two points of control without placing the lock on the palletizer" (Id. ¶ 30). In fact, Brewer asserts "[i]t was common practice at Leprino for employees to flag the curtain and not hit the E-stop." (Id. ¶ 31.) Leprino objects to these statements arguing that they lack foundation and constitute impermissible lay opinion. (Doc. 35-2 at 2, 12-14.) Here, the Court agrees with Leprino that Brewer may lack personal knowledge to testify about these facts. However, assuming a witness contains firsthand knowledge, Brewer could present the evidence in an admissible form by subpoenaing the witness to testify at trial. Thus,

Leprino's objections are overruled at this time.

### 4. Relevance

In her declaration, Brewer details Rocha's response to her complaints about Miranda. (Doc. 34-4 at 2 ¶ 7.) Brewer also states that she told Doyle "about retaliation that [she] was experiencing from Miranda" and that she believed Miranda wanted to get her fired. (Id. ¶ 8.) Leprino argues that these statements are irrelevant and immaterial. (Doc. 35-2 at 4.) However, relevance objections are "duplicative of the summary judgment standard" because courts rely on relevant evidence in ruling on a motion for summary judgment. Burch, 433 F. Supp. 2d at 1119 ("A court can award summary judgment only when there is no genuine dispute of *material* fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant." (emphasis in original)); see also Quanta, 2014 WL 1246144, at *2. Therefore, the Court overrules Leprino's relevancy objections at this time.

## IV. CONCLUSION

Accordingly, for the reasons set forth,

**IT IS HEREBY ORDERED** granting Defendant Leprino Foods Company, Inc.'s motion for summary judgment, or in the alternative, for partial summary judgment on the issue of punitive damages. (Doc. 33 at 6.)

**IT IS FURTHER ORDERED** overruling the parties' evidentiary objections. (Docs. 34-8; 34-9; 34-10; 35-2.)

Dated this 13th day of November, 2018.

_____
Honorable Stephen M. McNamee
Senior United States District Judge