# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brandy Brewer, | No. CV-1:16-1091-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| Leprino Foods Company, Inc., | |
| Defendant. | |

Before the Court is Defendant Leprino Foods Company, Inc.'s ("Leprino") Motion for Sanctions. (Doc. 41.) Plaintiff Brandy Brewer ("Brewer") filed her Opposition (Doc. 43), and Leprino filed its Reply in support (Doc. 45).

This case arose in 2016 when Brewer, a former employee of Leprino, filed a complaint alleging violations of the Family and Medical Leave Act ("FMLA") and California's Fair Employment and Housing Act ("FEHA"). The parties' discovery efforts became frustrated in 2017, and consequently, Leprino filed an Ex Parte Application requesting, amongst other things, that the Court impose discovery sanctions on Brewer pursuant to Federal Rule of Civil Procedure 37. The Court deferred ruling on the issue of sanctions; however, at a September 5, 2018 telephonic status conference, the Court allowed the parties to brief the instant motion.

## I. BACKGROUND

Leprino is a dairy product manufacturer, who claims it is the world's largest

mozzarella cheese producer. (Doc. 33-1 at 8.) According to Leprino, as a manufacturer using energized equipment, one of its most critical safety procedures is its Lockout/Tagout ("LOTO") policy – which requires an employee to disconnect and personally lock the energy sources on a machine, so that the machine cannot be reenergized and energy cannot be released when an employee is working on it. (Id. at 9.) In 2011, Leprino states it enacted "zero-tolerance" for LOTO violations, making even first-time violations subject to strong discipline up to and including termination. (Id.)

Brewer started working at Leprino in 2009. (Doc. 34 at 5.) Throughout her employment, Brewer took various leaves of absence under the FMLA; however, Brewer contends that she was not provided all leaves of absence she requested. (Doc. 36 at 3.) Brewer also claims that her supervisor, Jennifer Miranda ("Miranda"), was negatively affected by her use of FMLA leave. (Id.) On numerous occasions, Miranda told Brewer that she was a "bad employee" for taking FMLA leave. (Id.) Miranda also stated to Brewer that she preferred working with men because they did not have family obligations, and that she was tracking Brewer's FMLA hours to "take it to management to get her fired." (Id.)

From April 2014 to June 2014, Brewer discussed Miranda's comments with her superiors. (Doc. 34-4 at 2.) First, Brewer informed Senior Supervisor Erin McDaniel ("McDaniel") about Miranda's negative FMLA comments and perceived threats. (Id.) Next, Brewer complained to Senior Supervisor Jason Rocha ("Rocha"), who responded that she was "lucky to have a job" at Leprino and "not flipping burgers at Burger King." (Id.) On or about July 1, 2014, Brewer also complained to Processing Manager Don Doyle ("Doyle") that she believed Miranda was retaliating against her and wanted to get her fired. (Id.; Doc. 33-5 at 101.)

On July 9, 2014, Brewer committed a LOTO violation, and Miranda filed an incident report regarding the violation. (Docs. 33-1 at 13; 34 at 9; 41-1 at 5.) Per Leprino's LOTO policy, Brewer was suspended pending investigation. (Docs. 33-1 at 14; 34 at 9.) In her suspension meeting, Brewer attempted to discuss Miranda's retaliation; however, Brewer alleges that "nobody at the meeting did anything about it." (Doc. 34 at 10.) Brewer

was ultimately terminated from Leprino on July 18, 2014. (Docs. 33-1 at 15; 41-1 at 5.)

The following day, on July 19, 2014, Brewer filed a complaint with the California Department of Fair Employment and Housing ("DFEH"). (Doc. 41-2 at 147.) Then, on December 16, 2015, the DFEH notified Brewer that it had concluded its investigation, it was unable to determine that the information Brewer provided established a violation of a statute, and it provided Brewer a Right to Sue letter. (Docs. 43 at 6; 43-2 at 72-74.) Four months later, on April 25, 2016, Brewer filed the instant action in the Superior Court of California, County of Kings. (Docs. 41-1 at 5; 43 at 6.) Leprino subsequently removed this action to federal court. (Doc. 41-1 at 6.)

Brewer's remaining causes of action include: (1) retaliatory discharge in violation of the FMLA and FEHA; (2) gender discrimination in violation of FEHA; and (3) failure to prevent discrimination in the work place in violation of FEHA.[1] (Doc. 36 at 16.) This case is currently set for trial on April 1, 2019.

**A. The Parties' Discovery Efforts**

On May 25, 2016, Leprino served its initial discovery requests which included a Demand for Production ("Demand") of Documents, setting forth 21 separate document demands. (Doc. 41-1 at 6.) Demand Number 3 requested: "Any and all documents, including without limitation, notes, diaries, memoranda, calendars or journals, which refer or relate in any way to your employment with Defendant." (Doc. 41-2 at 15.) Demand Number 9 requested: "Any and all documents that in any way relate to any communications between you and any current of former employee of Defendant." (Id.)  In Demand Number 21, Leprino further requested: "Any and all postings by you on any social media site that relate in any way to your employment with Defendant." (Id. at 17.)

On July 20, 2016, Brewer produced 165 documents and served written responses to Leprino's initial discovery requests. (Doc. 41-1 at 6.) In response to Leprino's Demand Number 3, Brewer stated: "Plaintiff has made a diligent search and reasonable inquiry, and

---

[1] In a July 19, 2018 Order, the Court granted in part and denied in part Leprino's Motion for Summary Judgment. (Doc. 36.) The Court dismissed Brewer's retaliatory discharge claim under California Labor Code § 1102.5 and Brewer's intentional infliction of emotional distress claim. (Id. at 14, 16.)

- 3 -

Plaintiff will produce all documents responsive to this request currently in her possession, custody, or control." (Doc. 1 at 129.) In addition, Brewer responded to Demand Numbers 9 and 21: "After a reasonable and diligent search, Plaintiff is unable to comply with this request because no responsive documents are currently in Plaintiff's possession, custody, or control. Discovery is ongoing." (Id. at 131, 136.)

Leprino deposed Brewer on February 13, 2017. (Doc. 41-1 at 6.) In her deposition, Brewer was questioned about her document productions; specifically, Brewer was asked about the existence of any journals in her possession. (Id. at 11.) Brewer testified that her journal – that detailed her work activities from 2012 to 2014 – was not in her possession. (Id.)

On or about March 20, 2017, Brewer attempted to serve Leprino with subpoenas for its hourly employees. (Docs. 43 at 6, 11; 20-3 at 14.) However, Leprino would not accept service on their behalf. (Docs. 43 at 6, 11; 20-3 at 14.) Consequently, in April 2017, Brewer began to communicate with Leprino's hourly employees to obtain the individuals' addresses to serve subpoenas. (Doc. 43 at 6, 11.) Specifically, Brewer sent text messages to Elmer Meade ("Meade") and Gabriel Cervantes ("Cervantes") on April 5, 2017 and April 7, 2017, respectively. (Doc. 41-2 at 62-64.) Brewer asserts that, during this conversation with Cervantes, Cervantes stated that Leprino "retaliates" against its employees if they go against it. (Docs. 43 at 11; 43-2 at 7; 41-2 at 64.)

On April 7, 2017, Brewer notified Leprino that she located her journal. (Docs. 43 at 7; 43-1 at 2; 41-1 at 11.) Then, on April 14, 2017, fact discovery closed. (Doc. 41-1 at 6.)

**B. The Parties' Conduct After the Close of Discovery**

   **1. Brewer's Document Productions**

After the close of discovery, between April 14, 2017 and July 18, 2017, Brewer sent Leprino seven document productions totaling over 125 documents. (Doc. 41-1 at 6.) Further, Brewer produced 270 documents in September 2017. (Id. at 8.) The Court discusses Brewer's document productions, and the circumstances surrounding those productions, below.

On April 20, 2017, Brewer produced a copy of her journal to Leprino. (Docs. 43 at 7; 43-1 at 2.) The record reveals a pattern of Brewer producing the journal to Leprino, Leprino finding Brewer's productions to be illegible, the parties meeting and conferring about the journal, and Brewer reproducing the journal to Leprino. (Doc. 43-1 at 2-3.) This exchange occurred multiple times. (Id.) On May 19, 2017, Leprino conducted an in-person inspection of the original journal and discovered that the journal contained responsive pages that had not yet been produced. (Docs. 43 at 7; 41-2 at 38.) In an e-mail dated May 25, 2017, Leprino requested that Brewer produce the missing pages, and Brewer produced a copy the following day. (Docs. 41-2 at 100; 43 at 7.)

At Meade's and Cervantes's depositions held on June 6, 2017 and June 7, 2017, Leprino discovered that Brewer had sent Meade and Cervantes text messages in April 2017. (Doc. 41-2 at 28, 38.) At the time of the depositions, Brewer had not produced these messages to Leprino. (Doc. 41-1 at 7; 41-2 at 38.)

On June 22, 2017, Leprino wrote a letter to Brewer detailing its concerns with Brewer's document productions and demanding that Brewer produce all remaining responsive discovery within one week. (Doc. 41-2 at 37-39.) On June 29, 2017, the parties held a telephonic meet and confer regarding Brewer's document productions. (Id. at 41.) Prior to and following the meet and confer, Leprino e-mailed Brewer a record of her document productions. (Id., 43.) Brewer responded to further summarize the parties' meet and confer efforts. (Id. at 44-45.) Then, in a letter dated June 30, 2017, Leprino clarified its concerns about Brewer's document productions, described the documents that it requested Brewer produce, and detailed the form in which the documents should be produced. (Id. at 47-48.) Leprino also extended the deadline for Brewer to produce all responsive documents to July 7, 2017 and stated that, if Brewer failed to comply, Leprino would seek a Court order compelling Brewer to do so. (Id.)

On July 14, 2017, Brewer provided a partial document production to Leprino; however, Brewer informed Leprino that, because of a technical issue, she would be unable to produce all the responsive text messages until July 18, 2017. (Doc. 43 at 8.) On July 18,

2017, Brewer produced the remaining responsive documents. (Id.)

On August 1, 2017, Leprino filed an Ex Parte Application requesting that the Court reopen discovery for limited purposes. (Docs. 25; 25-1.) To support its motion, Leprino stated that Brewer produced over 125 documents after the close of discovery, depriving Leprino of the opportunity to depose Brewer about the documents. (Doc. 25-1 at 6.) In addition, Leprino asked the Court to impose discovery sanctions on Brewer pursuant to Federal Rule of Civil Procedure 37. (Id. at 16.) In a September 6, 2017 Order, the Court granted Leprino's Ex Parte Application; reopened fact discovery to redepose Brewer; and ordered Brewer to produce all remaining relevant text messages, Brewer's journal, and relevant social media postings. (Doc. 28.) The Court also extended the dispositive motion deadline and deferred ruling on discovery sanctions. (Id.)

Pursuant to the Court's Order, on September 29, 2017, Brewer produced 270 documents including text messages dated between April 2017 and September 2017; three digital videos of Leprino's processing facility taken in 2014 and 2017; and documents that were located on Brewer's electronic storage account, Dropbox, including screenshots of Facebook and Snapchat conversations with Leprino employees dated between 2014 and 2017, and 135 undated photographs of Leprino's facilities. (Docs. 41-1 at 8; 43 at 8-9.)

**2. Brewer's Redeposition**

On October 23, 2017, Leprino redeposed Brewer. (Doc. 41-1 at 8.) Leprino questioned Brewer about her preservation efforts and her efforts to search for documents that were responsive to Leprino's initial discovery request. Specifically, Leprino questioned Brewer about: (1) text messages from 2014 that describe an alleged affair between Miranda and another Leprino employee and that discuss the LOTO violation that led to Brewer's termination; (2) text messages dated between April 2017 and September 2017; (3) documents found on Brewer's Dropbox account; and (4) Brewer's journal.

First, Brewer testified that she used a Samsung Galaxy S3 ("Galaxy S3") while she was employed at Leprino. (Doc. 41-2 at 134.) Defense counsel questioned whether Brewer used the phone to communicate with Leprino employees, and Brewer named over 20

employees with whom she had communicated. (Docs. 41-1 at 8; 41-2 at 134-38; 43 at 11.) For example, Brewer testified that in April 2014 she received text messages from Leprino employees detailing an alleged affair between Miranda and another Leprino employee.[2] (Docs. 41-1 at 9; 41-2 at 142.) In addition, Brewer testified that she received text messages from Leprino employees regarding the LOTO violation that led to her termination. (Docs. 41-1 at 9; 41-2 at 143.) In response to Brewer's testimony, defense counsel asked Brewer to identify the individuals who had sent her the text messages detailing Miranda's affair and discussing Brewer's LOTO violation, and Brewer responded: "To be honest, I don't know. A lot of people, and to say one specific person over another, I don't know." (Doc. 41-2 at 143.)

Brewer further testified that she did not search the Galaxy S3 in response to Leprino's initial discovery request because she lost the phone in October 2014 when she accidentally placed the phone on the hood of her car and drove away. (Docs. 41-2 at 148; 43 at 10-11.) Brewer testified that she could not recall the phone number or the wireless carrier for the phone. (Docs. 41-1 at 9; 41-2 at 124-26.) Moreover, Brewer stated that she did not recall receiving a billing statement for the phone. (Docs. 41-1 at 9; 41-2 at 125.)

Second, Brewer testified that she did not communicate with Leprino employees between July 2014 – the date of her termination – and April 2017; however, she began to text message Leprino hourly employees in April 2017. (Docs. 41-1 at 10; 41-2 at 150-51; 43 at 11.) When asked what steps she took to preserve the 2017 text messages, Brewer stated that she called her wireless carrier in September 2017 "to do a print out of text messages"; however, the wireless carrier did not offer that service.[3] (Docs. 41-1 at 9; 41-2

---

[2] In her complaint, Brewer alleges that she confronted Miranda about the affair, and Miranda refused to discuss the matter. (Doc. 1 at 13.) After the confrontation, Brewer alleges that she reported Miranda's preferential treatment of male employees to her supervisor, McDaniel. (Id.) Brewer contends that Miranda's harassment began after she confronted Miranda and complained to McDaniel. (Id.)

[3] In her Opposition, Brewer contends that "[Leprino's] assertion of Plaintiff not searching for documents until September of 2017 is contradicted by the evidence in that Plaintiff produced text messages to [Leprino] in June of 2017." (Doc. 43 at 12.) Even if Brewer produced some messages to Leprino in June 2017, she testified several times that the first time she attempted to *preserve* the messages was in September 2017. (Brandy Brewer Dep. vol. 2, 312:9-13; 314:11-16; 317:14-17.)

at 114.) Brewer extracted the messages to her Gmail account that same month. (Doc. 41-2 at 117.)

Third, Brewer testified that she had a Dropbox account while she was employed with Leprino. (Doc. 41-2 at 129.) Brewer stated that Dropbox was an application on her Galaxy S3. (Id. at 130.) Brewer also claimed that, although photographs were stored on the Dropbox account, she did not know how the photographs from her phone were uploaded to Dropbox. (Id. at 130-32.) Brewer stated "I know it's linked to my e-mail account. And the only thing I remember that I ever do on my phones, but I haven't done on this one, is I usually sync my MSN account with it – the phone. So it's linked to my e-mail;" (Id. at 132.) "To be real honest, I don't know exactly how it's set up." (Id.) Brewer further testified that she did not search her Dropbox account in response to Leprino's initial discovery request. (Id. at 158-59.)

Fourth, Brewer stated that she located her journal in a box at her mother's house in March or April 2017. (Doc. 41-2 at 153.) Brewer further testified that she had lived in her mother's house since 2015. (Id. at 154.) In fact, Brewer stated that, at the time she received Leprino's initial discovery request, Brewer lived and stored personal property at her mother's house. (Id. at 156-57.) However, Brewer testified that she did not search the box in response to Leprino's request. (Id. at 153.)

### 3. Leprino's Motion for Sanctions

After the dispositive motion deadline, the Court scheduled a telephonic status conference to set this matter for trial. (Doc. 38.) At the hearing, defense counsel requested to bring the issue of discovery sanctions before the Court, and the Court advised the parties that it would allow briefing on the issue. (Id.) Accordingly, Leprino filed the instant motion on September 28, 2018. (Doc. 41.) Brewer filed her Opposition[4] (Doc. 43), and Leprino filed its Reply in support (Doc. 45).

---

[4] In her Opposition, Brewer requests that the Court impose sanctions on Leprino because Leprino disclosed an additional witness after the close of discovery. (Doc. 43 at 5-6.) The Court declines to resolve this issue because the issue is not properly brought before the Court. To properly bring this issue before the Court, Brewer must file a separately noticed Motion for Sanctions.

## II. DISCUSSION

Leprino requests that the Court impose discovery sanctions on Brewer. (Doc. 41-1 at 5.) Leprino contends sanctions are appropriate for the following reasons: (1) pursuant to Federal Rule of Civil Procedure 37(a)(5), Leprino is entitled to recover the fees and costs it incurred in making its Ex Parte Application; (2) pursuant to Federal Rules of Civil Procedure 37(c) and 30(d), Leprino should be reimbursed the fees and costs it incurred in redeposing Brewer; and (3) pursuant to Federal Rule of Civil Procedure 37(e), Leprino is entitled to sanctions for Brewer's failure to preserve electronically stored information ("ESI"). (Id.) The Court considers each of Leprino's arguments in turn.

### A. Sanctions under Federal Rule of Civil Procedure 37(a)(5)

Leprino contends that it is entitled to the fees and costs it incurred in making its Ex Parte Application under Rule 37(a)(5). (Doc. 41-1 at 11-12.) Specifically, Leprino argues that, because it attempted to meet and confer with Brewer in good faith prior to filing its motion and because the Court granted Leprino's motion, it is entitled to recover its fees and costs in the amount of $10,480.00. (Id.)

Pursuant to Rule 26, a party must automatically disclose documents in the party's "possession, custody, or control" that the party will use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). Similarly, Rule 34 requires a party to produce all discoverable and responsive documents that are in the party's possession, custody, or control in response to a request for production. Fed. R. Civ. P. 34(a)(1)(A); Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 164 n.6 (1980). Thus, a party must make a "reasonable search" for responsive documents. City of Colton v. Am. Promotional Events, Inc., NO. EDCV 09-01864 PSG (SSx), 2011 WL 13223968, at *4 (C.D. Cal. Nov. 28, 2011). Further, Rule 26 also requires a party to timely supplement its disclosures if the party learns that its disclosures have become materially incomplete or inaccurate. Fed. R. Civ. P. 26(e)(1)(A).

Rule 37 is a mechanism that a party can employ to obtain documents subject to disclosure. See generally Fed. R. Civ. P. 37. Pursuant to Rule 37(a)(1), a party may move

for an order compelling disclosure after the party has attempted in good faith to obtain the disclosure without court action. Fed. R. Civ. P. 37(a)(1). If a court grants the motion, then the court must order the party "whose conduct necessitated the motion… to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The court must not award monetary sanctions if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; "the opposing party's nondisclosure, response, or objection was substantially justified"; or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

The nonmoving party has the burden to establish substantial justification or that other circumstances make the sanctions award unjust. Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994) (finding burden of showing substantial justification and special circumstances is on party facing sanctions under Rule 37(d)); Subramani v. Wells Fargo Bank, N.A., No. 13-cv-01605-SC, 2015 WL 12964616, at *1 (N.D. Cal. Mar. 18, 2015) (applying same burden to Rule 37(a) because language is identical to Rule 37(d)). Conduct is substantially justified where "there is a 'genuine dispute'" or "if reasonable people could differ as to [the appropriateness of the contested action]." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (defining "substantial justification" under Equal Access to Justice Act); Subramani, 2015 WL 12964616, at *1 (applying same definition to "substantial justification" under Rule 37(a)(5)). "The test for substantial justification is one of reasonableness." Cathey v. City of Vallejo, No. 2:14-cv-01749-JAM-AC, 2015 WL 5734858, at *8 (E.D. Cal. Sept. 29, 2015) (internal quotations omitted) (quoting United States v. First Nat. Bank of Circle, 732 F.2d 1444, 1447 (9th Cir. 1984)).

Here, Leprino contends that it fulfilled its obligation to meet and confer in good faith because it engaged in hours of good faith meet and confer efforts by phone and in writing to secure documents that were responsive to its initial discovery request. (Docs. 41-1 at 12; 45 at 6.) The Court agrees. The evidence clearly demonstrates that Leprino met and conferred with Brewer at least three times prior to filing its Ex Parte Application and,

in each meet and confer, Leprino detailed its concerns about defects in Brewer's disclosures. (Doc. 41-2 at 37-39, 41, 43-45, 47-48.) Despite Leprino's efforts, Brewer failed to cure the defects in subsequent productions and continued to withhold responsive documents from Leprino. (Id.) Therefore, Leprino sufficiently satisfied its meet and confer obligations under Rule 37(a)(1) and Local Rule 251(b)[5] prior to filing its Ex Parte Application.

In addition, Brewer has failed to advance a legitimate argument that would substantially justify her discovery conduct. See Hyde & Drath, 24 F.3d at 1171 (stating burden to prove substantial justification is on party facing sanctions). Brewer does not explicitly argue that her conduct was substantially justified. To give her the fullest consideration, the Court construes the following statements from her Opposition as arguing such. First, Brewer contends that, because Leprino refused to accept service on behalf of its hourly employees, Brewer was required to communicate with Leprino's employees in 2017 to obtain their addresses to facilitate service of subpoenas. (Doc. 43 at 11.) Accordingly, Brewer argues that the late disclosure of those messages was justified because the messages did not exist at the time of Leprino's initial discovery request. (Id.) While the Court understands Brewer's need to communicate with Leprino's employees, Brewer's argument does not justify the untimely disclosure of those communications. The record shows that Brewer communicated with Meade and Cervantes on April 5, 2017 and April 7, 2017, respectively, but waited until after the close of discovery to produce those messages. (Docs. 41-1 at 7; 41-2 at 28, 38, 62-64.) Because the messages existed prior to the close of discovery, Brewer should have disclosed the messages during that period, and her failure to do so violated Rule 26(e). See Fed. R. Civ. P. 26(e)(1)(A). Moreover, Brewer's late disclosure also violated Rule 26(a). Brewer claims that, during the conversation with Cervantes in April 2017, he stated that Leprino "retaliates" against its employees if they go against it. (Doc. 43 at 5, 11.) Because this statement directly supports

---

[5] Local Rule 251(b) states that a discovery motion will not be heard unless the parties meet and confer prior to filing the motion and the parties "set forth their differences and the bases therefor in a Joint Statement re Discovery Disagreement." L.R. 251(b).

Brewer's retaliation claims against Leprino, Brewer was required to disclose the messages without awaiting a response. See Fed. R. Civ. P. 26(a)(1)(A)(ii). However, the record shows that Brewer produced the messages only after Leprino discovered them at a June 2017 deposition and subsequently requested that the messages be produced. (Docs. 41-1 at 7; 41-2 at 28-30, 33-34, 37-39.) Thus, Brewer's late disclosure of the text messages was not substantially justified.

Next, Brewer contends that the late disclosure of her journal was substantially justified because, at the time of Leprino's original discovery request and at the time of her deposition, she was unaware of the journal's existence. (Doc. 43 at 14.) The timing of Brewer's discovery and subsequent production of her journal is suspect. At the time of Leprino's initial discovery request, Brewer lived and stored property at her mother's house, but she failed to search all the property at her mother's house – including the box where her journal was located – in response to Leprino's request. (Docs. 41-2 at 153, 156-57; 43-2 at 12.) Brewer's failure to make even the most cursory inspection of the personal property at her mother's house was unreasonable and violated Rule 34. See Fed. R. Civ. P. 34; see also Am. Promotional Events, Inc., 2011 WL 13223968, at *4. Moreover, Brewer's late disclosure also violated Rule 26(e). Brewer alleges that she located the journal after her initial deposition and one week prior to the close of discovery; however, she waited until after the close of discovery to produce it. (Doc. 43 at 7.) Thus, Brewer failed to timely supplement her disclosures in violation of Rule 26(e). See Fed. R. Civ. P. 26(e)(1)(A). Further, Brewer failed to articulate any argument that would justify withholding responsive pages from the journal when she produced it to Leprino.

Brewer further argues that the late disclosure of documents found on her Dropbox account was justified because she volunteered the documents to Leprino when she located them in August 2017. (Doc. 43 at 15.) However, this does not justify her failure to search the Dropbox account earlier. The record shows that Brewer had a Dropbox account while she was employed with Leprino, and although she was unaware how photographs were uploaded to Dropbox, she knew that photographs were stored on the account. (Doc. 41-2

at 129-32.) Thus, Brewer's failure to search her Dropbox account in response to Leprino's request was unreasonable and violated Rule 34. See Fed. R. Civ. P. 34; see also Am. Promotional Events, Inc., 2011 WL 13223968, at *4. Moreover, Brewer's supplemental disclosures were untimely because she waited until after the close of discovery to search the Dropbox account for responsive documents. See Fed. R. Civ. P. 26(e). Accordingly, Brewer has failed to establish that her discovery conduct was substantially justified.

Nor has Brewer established that a sanctions award would be unjust. See Hyde & Drath, 24 F.3d at 1171 (stating party facing sanctions has burden to prove circumstances would make award unjust). Brewer contends that sanctions would be unjust because she did not act intentionally or conceal information from Leprino during the discovery process; rather, she contends that she volunteered information to Leprino as she discovered it. (Doc. 43 at 19.) Even if Brewer's conduct was not intentional, her failure to comply with her disclosure obligations under Rule 26(a) and (e) was, at the very least, negligent. A court may impose sanctions even for negligent conduct. See Marquis v. Chrysler Corp., 577 F.2d 624, 642 (9th Cir. 1978) (citation omitted). Accordingly, Brewer has failed to carry her burden of proving that a sanctions award would be unjust.

Therefore, the Court finds that Leprino is entitled to its reasonable expenses incurred in filing its Ex Parte Application pursuant to Rule 37(a)(5) because Leprino attempted in good faith to secure responsive documents without court action, and Brewer failed to establish that her conduct was substantially justified or that circumstances would make a sanctions award unjust. The Court, however, will determine the amount of fees and costs to be awarded at the conclusion of this trial.

**B. Sanctions under Federal Rules of Civil Procedure 37(c) and 30(d)**

Leprino requests that the Court order Brewer to pay the fees and costs that Leprino incurred in redeposing Brewer in the amount of $7,413.05 pursuant to Rules 37(c) and 30(d). (Doc. 41-1 at 12-14.)

Under Rule 37(c), a party who fails to make a disclosure under Rule 26(a) or (e) is prohibited from using that information on a motion, hearing, or at trial. Fed. R. Civ. P.

37(c)(1); see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). However, a party may use the information if the failure is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The burden to establish substantial justification or harmlessness is on the party facing sanctions. Yeti by Molly, Ltd., 259 F.3d at 1107. The Ninth Circuit has found that disruption to a court's schedule is not harmless. Wong v. Regents of the Univ. of Cal., 410 F.3d 1052, 1062 (9th Cir. 2005).

Here, the Court has already found that Brewer's discovery conduct violated Rule 26(a) and (e) and that Brewer failed to substantially justify her conduct. The Court also finds that Brewer has failed to establish that her late disclosures were harmless. See Yeti by Molly, Ltd., 259 F.3d at 1107 (stating burden on party facing sanctions to prove harmlessness). Brewer contends that her conduct was harmless because Leprino has not suffered prejudice. (Doc. 43 at 15.) The Court disagrees. The bulk of Brewer's disclosures were produced after the close of fact discovery, depriving Leprino of the opportunity to depose Brewer about the information during the discovery period. (Doc. 41-1 at 6, 8.) Consequently, the Court reopened Brewer's deposition to mitigate the prejudice to Leprino and extended the dispositive motion deadline to accommodate Brewer's redeposition. (Doc. 38.) However, this modification to the Court's schedule was not harmless. See Wong, 410 F.3d at 1062. Because Brewer's failure to comply with Rule 26(a) and (e) was neither substantially justified nor harmless, sanctions are warranted under Rule 37(c).[6]

Although Rule 37(c) provides for the preclusion of evidence when a party fails to comply with its disclosure obligations, the Court may impose other appropriate sanctions including payment of reasonable expenses and instructing the jury of the party's failure to comply. See Fed. R. Civ. P. 37(c)(1)(A)-(C). Because the late disclosed evidence – namely, the text messages created in 2017, the documents found on Brewer's Dropbox account, and Brewer's journal – may support both Brewer's and Leprino's cases, the Court finds that preclusion is not appropriate. Instead, the Court finds that monetary sanctions are warranted. However, the Court will determine the amount of fees and costs to be awarded

---

[6] Because the Court finds that sanctions are appropriate under Rule 37(c), the Court declines to analyze whether sanctions are also appropriate under Rule 30(d).

- 14 -

at the conclusion of this trial.

### C. Sanctions Under Federal Rule of Civil Procedure 37(e)

Leprino moves for Rule 37(e) sanctions, arguing that Brewer failed to take reasonable steps to preserve text messages – created in 2014 on Brewer's Galaxy S3 that discuss an alleged affair between Miranda and another Leprino employee and detail the LOTO violation that led to Brewer's discharge – when she was under a duty to do so. (Doc. 41-1 at 14-16.)

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 649 (9th Cir. 2009) (internal quotations and citations omitted). A district court may impose sanctions for spoliation pursuant to its inherent authority and Federal Rule of Civil Procedure 37(e). Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006). Rule 37(e) provides the legal standard for spoliation of ESI. See Fed. R. Civ. P. 37(e); see also Porter v. City and County of San Francisco, No. 16-cv-03771-CW(DMR), 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018). Under Rule 37(e), spoliation occurs if: (1) the relevant ESI "should have been preserved in the anticipation or conduct of litigation"; (2) the ESI "is lost because a party failed to take reasonable steps to preserve it"; and (3) "[the ESI] cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

A duty to preserve evidence arises "the moment that litigation is reasonably anticipated." DelGiacco v. Cox Commc'ns, Inc., No. SACV 14-0200 DOC(DFMx), 2015 WL 1535260, at *22 (C.D. Cal. Apr. 6, 2015) (internal quotations omitted) (quoting Apple Inc. v. Samsung Elecs. Co., 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012)). "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." Waymo LLC v. Uber Techs., Inc., No. C 17-00939 WHA, 2018 WL 646701, at *14 (N.D. Cal. Jan. 29, 2018) (internal quotations omitted) (quoting Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311, 1320 (Fed. Cir. 2011)). The Ninth Circuit has

not explicitly identified when the duty to preserve arises; however, "trial courts in this Circuit generally agree that, '[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.'" Rockman Co. (USA), Inc. v. Nong Shim Co., 229 F. Supp. 3d 1109, 1122 (N.D. Cal. 2017) (quoting In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)). The duty to preserve may arise before litigation has formally commenced. See Apple Inc., 881 F. Supp. 2d at 1136.

The duty to preserve extends only to relevant evidence. Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). "Relevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998). Relevance means that the discovery sought is "reasonably calculated to lead to the discovery of admissible evidence." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352 (1978) (quoting Fed. R. Civ. P. 26(b)(1)). Moreover, the Ninth Circuit has stated that "because 'the relevance of… [destroyed] documents cannot be clearly ascertained because the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'" Leon, 464 F.3d at 959.

If spoliation occurs and a court finds prejudice to the nonspoliating party, then the court may impose sanctions "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). However, if a court finds that the spoliating "party acted with the intent to deprive another party of the information's use," then the court may impose harsher sanctions. Fed. R. Civ. P. 37(e)(2). A court may find intentional spoliation where "the evidence shows or it is reasonable to infer, that the [] party purposefully destroyed evidence to avoid its litigation obligations." Porter, 2018 WL 4215602, at *3.

Here, Leprino contends that Brewer's duty to preserve evidence arose when she filed a complaint with the DFEH. (Doc. 41-1 at 15.) In contrast, Brewer argues that the duty to preserve did not arise until she filed the instant lawsuit because she did not intend to sue Leprino at the time that she filed the complaint with the DFEH. (Doc. 43 at 9-10.) The Court agrees with Leprino. Despite Brewer's contention that she did not intend to sue

Leprino at the time she filed the DFEH complaint, the facts and circumstances as alleged by Brewer, the parties' briefings on the instant motion, and all the prior pleadings in this case suggest otherwise. According to Brewer, Miranda began harassing Brewer after Brewer confronted Miranda about text messages she received, detailing Miranda's alleged affair. (Doc. 1 at 13.) After the confrontation, Brewer alleges that Miranda made negative comments about Brewer's use of FMLA leave, Miranda stated she preferred working with men, and Miranda told Brewer she was tracking Brewer's use of leave to take it to management to get her fired. (Doc. 36 at 3.) Brewer perceived these comments as "threats," and as the "threats" continued, Brewer reported Miranda's behavior to numerous supervisors including McDaniel, Rocha, and Doyle. (Id.) However, Brewer contends that management refused to investigate Brewer's allegations and threatened her job. (Docs. 34 at 6-7; 36 at 4.) Brewer alleges that Miranda's conduct continued, and on July 9, 2014, "Miranda suspended [] Brewer for a false reason of failing to lock out the palletizer." (Doc. 34 at 9.) In her suspension meeting, Brewer claims that she attempted, once again, to report Miranda's retaliation; however, "nobody at the meeting did anything about it," and Brewer was terminated. (Id. at 10.) The day after her termination, Brewer filed a complaint with the DFEH. (Doc. 41-2 at 147.) Because Brewer repeatedly attempted to report and remedy the harassment she was experiencing, a reasonable person in Brewer's situation would have reasonably foreseen future litigation the moment that she filed a complaint with the DFEH. See Waymo LLC., 2018 WL 646701, at *14. Therefore, Brewer's duty to preserve arose when she filed a complaint with the DFEH.

Additionally, Leprino asserts, and Brewer does not dispute, that the messages would have been highly relevant to Brewer's claims. (Docs. 41-1 at 15; 43 at 11.) The Court agrees and finds that the messages may have some relevance. According to Brewer, on or around April 2014, various employees sent Brewer text messages detailing Miranda's alleged affair. (Docs. 1 at 12; 41-1 at 16.) Brewer claims that Miranda's harassment began after she confronted Miranda about the affair. (Doc. 1 at 13.) Accordingly, these text messages are probative of Brewer's gender discrimination and retaliation claims. Brewer

also alleges that various employees sent Brewer text messages regarding the LOTO violation that led to her discharge. (Doc. 41-1 at 15-16.) Because Brewer alleges that Miranda discriminated against her in reporting the LOTO violation, these text messages are also relevant to her gender discrimination and retaliatory discharge claims. Therefore, the Court finds that these messages may have some relevancy at trial.

The Court further finds that Brewer failed to take reasonable steps to preserve the text messages. As Leprino highlights, and Brewer fails to dispute, Brewer "made no effort to back-up or preserve the Galaxy S3" prior to its loss in October 2014. (Doc. 41-1 at 15.) Thus, Brewer failed to preserve the text messages when she was under a duty to do so.

Next, Brewer contends that spoliation did not occur because the messages could be obtained from third parties. (Doc. 43 at 11-12, 14.) However, Brewer foreclosed that possibility. Although Brewer provided Leprino a laundry list of individuals whom she generally communicated with on the Galaxy S3, when asked to specifically identify the individuals who sent the messages detailing Miranda's alleged affair and Brewer's LOTO violation, Brewer refused. (Doc. 41-2 at 134-38, 143.) As such, it is unreasonable to expect Leprino to obtain replacement messages from third parties when Brewer refused to specifically identify any of the individuals who sent her the text messages at issue. Thus, it is not possible to obtain replacement messages from third parties. Nor is it possible to obtain replacement messages directly from the wireless carrier. Brewer testified that she cannot remember the Galaxy S3's phone number or wireless carrier. (Doc. 41-2 at 124-26.) In addition, Brewer testified that she does not recall viewing a billing statement for the phone. (Id. at 125.) Thus, it is not possible to restore or replace the messages from either third parties or the wireless carrier.

Therefore, the Court finds that spoliation occurred and sanctions under Rule 37(e) are warranted because Brewer failed to take reasonable steps to preserve relevant text messages while she was under a duty to do so, and the messages cannot be restored or replaced.

Sanctions are appropriate under Rule 37(e)(1) because Leprino was prejudiced by

Brewer's spoliation. See Fed. R. Civ. P. 37(e)(1). The prejudice to Leprino is clear. Because the text messages were highly probative of Brewer's claims, Leprino is prejudiced because it is unable to review and properly prepare a defense to evidence that would be offered against it at trial.

Sanctions are also appropriate under Rule 37(e)(2) because Brewer "acted with the intent to deprive [Leprino] of the information's use in litigation." Fed. R. Civ. P. 37(e)(2). As a defense and in an effort to sidestep a finding of intent, Brewer claims that she innocently lost the text messages in October 2014 when she placed her phone on the hood of her car and drove away. (Doc. 43 at 10-11.) At first blush, Brewer's explanation seems plausible, but the overwhelming objective evidence, and her lack of corroboration, suggests otherwise. Brewer failed to take any measures to preserve the text messages prior to October 2014 despite her duty to do so; Brewer provided no independent record of the phone; and Brewer refused to identify the individuals with whom she communicated, essentially depriving Leprino of any possibility of resurrecting the messages or coming to a meaningful understanding of the messages' content. Thus, Brewer's pattern of conduct suggests intentional spoliation.

Leprino requests the following sanctions: (1) monetary sanctions in the amount of Leprino's fees and costs associated with its Ex Parte Application; (2) monetary sanctions in the amount of Leprino's fees and costs associated with Brewer's redeposition; (3) monetary sanctions in the amount of Leprino's fees and costs associated with the instant Motion for Sanctions; (4) an order precluding Brewer from "referring to or presenting evidence at trial about any alleged communications" about the LOTO violation that led to her discharge or the alleged affair between Miranda and another Leprino employee; and (5) and order dismissing Plaintiff's claims, or in the alternative, providing an adverse inference jury instruction at trial. (Doc. 41-1 at 18.) However, "[t]he remedy should fit the wrong." Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendment. Because the spoliated evidence appears to be favorable to Brewer, the Court finds that preclusion is premature at this time. The Court may, however, provide an adverse inference instruction

at trial regarding Brewer's intentional spoliation of evidence.[7]

### III. CONCLUSION

Based on the foregoing, the Court finds that Leprino is entitled to fees and costs incurred in making its Ex Parte Application and in redeposing Brewer. Although Leprino is entitled to monetary sanctions, the Court will determine the amount of fees and costs to be awarded at the conclusion of this trial.

Further, the Court finds that an adverse inference instruction at trial regarding Brewer's intentional spoliation of evidence may also be an appropriate sanction.

Accordingly,

**IT IS HEREBY ORDERED** granting in part and denying in part Leprino Foods Company Inc.'s Motion for Sanctions. (Doc. 41.)

**IT IS FURTHER ORDERED** that Brewer shall pay Leprino's fees and costs incurred in making its Ex Parte Application in an amount to be determined at the conclusion of this trial.

**IT IS FURTHER ORDERED** that Brewer shall pay Leprino's fees and costs incurred as a result of her redeposition in an amount to be determined at the conclusion of this trial.

**IT IS FURTHER ORDERED** that the Court reserves the right to provide an adverse inference instruction at trial regarding Brewer's intentional spoliation of evidence.

Dated this 29th day of January, 2019.

_____
Honorable Stephen M. McNamee
Senior United States District Judge

---

[7] Although not raised by the parties, as a trial matter, the Court notes that the spoliation of these text messages also gives rise to the issue of Federal Rule of Evidence 1002, the "best evidence" rule. See Fed. R. Evid. 1002.